IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID ISAAC MAIMON,

        Plaintiff,         Civil No. 01-6180-CL

        v.                 FINDINGS AND
                          RECOMMENDATION

DIANE REA, et al.,

        Defendants.

CLARKE, Magistrate Judge.

    Plaintiff filed this action under 42 U.S.C. §§ 1983 and 1985 alleging violations of his civil rights arising from his parole release hearing in 2001. Plaintiff characterizes his claims as: (1) ex post facto violations; (2) conspiracy, breach of duty, malpractice; (3) due process deprivation based on standard of review; (4) unconstitutionally vague diagnosis of present severe emotional disturbance; and, (5) violation

1 - FINDINGS AND RECOMMENDATION

of due process rights via "boilerplate" postponement orders.[1]

Plaintiff seeks to enjoin defendants from applying certain interview procedures, policies and practices from his prison exit interview. Complaint (#2), p. 38; see also, Plaintiff's Cross Motion for Summary Judgment (#114), p. 1. Specifically, plaintiff seeks to challenge the Parole Board's application of ORS 144.125(3) in deferring plaintiff's parole upon the Board's finding that plaintiff suffers from a "present severe emotional disturbance (PSED) such as to constitute a danger to the health and safety of the community."

Before the court are the parties cross motions for summary judgment (#105) and (#114).

The relevant facts are as follows: On December 12, 1983, plaintiff was convicted of Rape in the First Degree and Sexual Abuse in the First Degree, and sentenced by the Multnomah County Circuit Court to 20 years imprisonment with a ten year minimum. On February 6, 1985, plaintiff pled guilty to four counts of Rape in the First Degree, and two counts of Sexual Abuse in the First Degree, and sentenced by the Multnomah County Circuit Court to 20 years imprisonment with a ten year minimum to be served consecutively with his other sentence. Pursuant to his guilty plea, the Clackamas County District Attorney dismissed a pending charge of Rape in the First

---

[1] Plaintiff also alleged a claim for denial of sex offender treatment, which was previously dismissed by the court.

2 - FINDINGS AND RECOMMENDATION

Degree.

On September 19, 2001, the Oregon Board of Parole and Post Prison Supervision ("Board") held a parole release hearing for plaintiff. The Board found that plaintiff suffered from a present severe emotional disturbance ("PSED") that constituted a danger to the health or safety of the community and deferred plaintiff's release date 24 months. Plaintiff requested administrative review and the Board affirmed its earlier decision.

Prior to the scheduled release of any prisoner, the Board may conduct an exit interview hearing in which it reviews the prisoner's parole plan, psychiatric or psychological reports, and the record of the prisoner's conduct during confinement. O.R.S. 144.125(1). The Board may postpone a prisoner's scheduled release date if it finds: (1) the prisoner engaged in serious misconduct during confinement; (2) the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community; or (3) the prisoner's parole plan is inadequate. O.R.S. 144.125(2), 3(a) and (4). The Board has the authority to order an examination by a psychiatrist or psychologist prior to a prisoner's release on parole. O.R.S.144.223.

<u>Claim One:</u> Plaintiff alleges that the Board violated the ex post facto clause by failing to apply the version of O.R.S. 125(3) that was in effect at the time he committed his crimes. Plaintiff argues that under the former O.R.S. 144.125(3), a

3 - FINDINGS AND RECOMMENDATION

psychiatrist or psychologist must make a diagnosis of PSED or the Board must release him

In finding that plaintiff had a PSED, the Board expressly stated that it applied the law in effect at the time plaintiff committed his crimes.  <u>See</u>, Defendants' Exhibit 103, p. 2.

Former O.R.S. 144.125(3)(1983) provided: "If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release date until a specified future date." In 1993, the Oregon legislature "eliminated the requirement of a diagnosis and eliminated 'present severe' from the definition of the qualifying mental state."  <u>Brown v. Palmateer</u>, 379 F.3d 1089, 1094 (9th Cir. 2004).

Plaintiff claims that under the former O.R.S. 144.125, the Board lacked authority to postpone his release without a diagnosis by a psychiatrist or psychologist that he suffered from a PSED.

A psychiatric or psychological diagnosis must provide the foundation for the Board's finding that an emotional disturbance is "present" and "severe."  <u>Christiansen v. Thompson</u>, 176 Or. App. 54, 61, 31 P.3d 449 (2001). However, the statute does not "require that a psychiatrist or psychologist recite the words 'severe emotional disturbance' when diagnosing the prisoner." <u>Weider v. Armenakis</u>, 154 Or.

4 - FINDINGS AND RECOMMENDATION

App. 12, 16; 959 P.2d 623 (1998), *withdrawn* July 13, 1998, *reasoning re-adopted and reaffirmed* Merril v. Johnson, 155 Or. App. 295, 964 P.2d 284 (1998); see also, Godleske v. Morrow, 161 Or. App. 523, 526-27, 984 P.2d 339 (1999) (adopting Weider holding for 1981 version of O.R.S. 144.125(3), which was in effect in 1983). Rather, "the statute contemplates that the Board consider all information properly before it, and not just psychiatric or psychological diagnosis, in reaching a conclusion about whether a prisoner suffers from a 'present severe emotional disturbance such as to constitute a danger to the health and safety of the community.'" Weider, supra at p. 17-18; see also, Davis v. Johnson, 156 Or. App. 391, 392, 967 P.2d 484 (1998) (O.R.S. 144.125 "contemplates that the Board will consider all information properly before it, using data contained in physical, mental, and psychiatric examinations of prisoners, as well as from other relevant sources.")

In this case, in making its findings relative to plaintiff's release the Board considered "independent psychological evaluation(s)" of plaintiff. Defendants' Exhibit 102, p. 2. Although those evaluations may not have included a specific diagnosis of PSED, the evaluations "coupled with all the information that the Board" considered provided the foundation for the Board's conclusion. Id. That is all that the 1981 version of O.R.S. 144.125(3), as interpreted by the Oregon courts, requires.

Claim 2: Plaintiff alleges that Defendant Shellman was

5 - FINDINGS AND RECOMMENDATION

"grossly negligent, acted in malpractice, and breached his statutory duty under (1983) ORS 144.125(3) and his contractual duty with Defendant Rea" when his psychological examination report failed to make a diagnostic finding of PSED. Complaint (#2) p. 2. Plaintiff further alleges that Dr. Shellman conspired with Defendant Rae "to withhold probative evidence that Plaintiff's 'alleged emotional disturbance' is not 'severe,' as well as evidence that Plaintiff did not have an antisocial personality disorder." Id., p. 3.

Plaintiff's negligence/malpractice allegations are confusing. Plaintiff's claim is *apparently* that in order to support the Board's conclusion that plaintiff is a danger to the health and safety of the community and deny or postpone his release, Dr. Shellman was required to make a specific diagnostic finding that plaintiff suffered from a present severe emotional disturbance.

As noted above, O.R.S. 144.125(3) does not require that a psychiatrist or psychologist recite the words 'severe emotional disturbance' when diagnosing a prisoner or require the Board to base its release decision solely on such a specific diagnosis. Weider v. Armenakis, supra. Accordingly, plaintiff's claim that Dr. Shellman was grossly negligent, committed malpractice and breached a duty under O.R.S. 144.125(3) in failing to make a diagnostic finding of PESD, fails as a mater of law.

To state a claim for a civil rights conspiracy, a

6 - FINDINGS AND RECOMMENDATION

plaintiff must allege an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights and a deprivation of those rights in the form of overt acts in furtherance of the agreement. Boilerplate allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1983. Where no specific overt acts in furtherance of the conspiracy are alleged, the claim must be dismissed. See, Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990); Jones v. Community Redevelopment Agency, 733 F.2d 646 (9th Cir. 1984).

In this case, plaintiff has not alleged any specific facts or offered any evidence to support a conspiracy; Plaintiff's mere allegation of conspiracy is insufficient to state a claim.

Plaintiff also invokes the court's jurisdiction under 42 U.S.C. § 1985. However, none of plaintiff's allegations state claims cognizable under 42 U.S.C. § 1985.

Claim Three:  Plaintiff alleges that "Defendant Rea applies the 'some evidence' standard of review in exit interview proceedings in violation of existing law which requires 'clear and convincing' evidence as a standard of review" and that the "lessor standards of reviewing evidence" in determining PSED causes a "significant deprivation of liberty interests" and "violates plaintiff's due process rights." Complaint (#2) p.

7 - FINDINGS AND RECOMMENDATION

3.[2]

In <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985), the Supreme Court held that only "some evidence" is required to satisfy due process in a prison board determination. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of witnesses, or weighing evidence. ... Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id</u>.

Although the issue in <u>Superintendent v. Hill</u> was the accumulation of good time credits, rather than a parole decision, both directly affect the duration of a prison term. Thus, the <u>Hill</u> holding is applicable to this case. <u>See</u>, <u>Jancsek v. Oregon Board of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987).

Plaintiff argues that "new state court rule(s)" establish that prisoners have "a cognizable liberty interest in exit interview hearings; thus, rendering <u>Jancsek</u> and <u>Murphy</u> ripe for reversal because those decisions had not determined whether cognizable liberty interests were at issue." Plaintiff's Cross Motion for Summary Judgment (#114), p. 51.

However, in <u>Jancsek</u>, while declining to decide whether

---

[2]As a factual matter, there is nothing in the record to indicate whether the Board applied the "some evidence" standard, a "clear and convincing evidence" standard, or some other standard to its determination regarding plaintiff's parole.

8 - FINDINGS AND RECOMMENDATION

Oregon parole statutes created a liberty interest, the court found that, even if a liberty interest existed, the inmates had been given constitutional due process. "[W]e assume for the purposes of this decision that prisoners have such a liberty interest, but we conclude that Janscek was afforded all the due process protection that is required." <u>Janscek v. Oregon Board of Parole</u>, <u>supra</u>, at p. 1390.

Accordingly, I find that the "some evidence" standard is the appropriate standard to apply to the Board's decision in this case.

Plaintiff's crimes were horrific. The sordid details are set forth in the record and need not be repeated here. Dr. Shellman diagnosed plaintiff with Antisocial Personality Disorder with Aytipical Paraphilia with Sadistic Features, by history.[3] Defendants' Exhibit 106, p. 1. Dr. Shellman believed that plaintiff "would be a danger to the community until he received very intensive sex offender treatment in a controlled setting." <u>Id</u>. at p. 3. Dr. Shellman felt that plaintiff had "a limited capacity to examine himself in a critical fashion and then modify his behavior accordingly," "problems with self control," and concluded that plaintiff would have difficulties in an unstructured environment. <u>Id</u>.

---

[3]Paraphilia is defined as "[a]ny of a group of psychosexual disorders characterized by sexual fantasies, feelings, or activities involving a nonhuman object, a nonconsenting partner such as a child, or pain or humiliation of oneself or one's partner." American Heritage Dictionary of the English Language, Fourth Edition 2000.

9 - FINDINGS AND RECOMMENDATION

Plaintiff hired a psychologist, Dr. John Nance to do a second evaluation. Dr. Nance found that plaintiff suffered from Narcissistic Personality Disorder with antisocial characteristics, Paraphilia NOS, and Post-traumatic Stress Disorder with obsessive compulsive symptoms. Defendants' Exhibit 107, p. 4.

Dr. Nance believed that plaintiff posed a "medium level of risk for future acts of dangerousness," Id., at p.4. Dr. Nance noted that "[i]n the controlled environment of a maximum security prison, there is little chance of corrosion and cut off causing a major lapse. These will be very real dangers upon his release." Id., p. 5. Dr. Nance indicated that plaintiff was not fully rehabilitated, but felt that "the community's safety interest would be better served by release with conditions," Id.,

I find that the nature of plaintiff's crimes, the number of offenses he committed, and the psychological evaluations by Dr. Shellman and Dr. Nance easily satisfies the "some evidence" standard to support the Board's conclusion that plaintiff suffers from a PSED and would constitute a danger to the health or safety of the community if released.[4] Claim Four: Plaintiff alleges that the Board's "new policy interpretation of PSEDD (sic) as a 'legal standard' contradicts the former practice of a medical diagnosis ...

---

[4] Assuming arguendo that a "clear and convincing evidence" standard may apply, that standard was also clearly met.

10 - FINDINGS AND RECOMMENDATION

applied by former Board members, as well as, various definitions by psychologists as to the diagnostic criteria of PSEDD." Complaint (2) p. 3. Plaintiff claims that the definition of "PSEDD" as a legal standard is unconstitutionally vague in that it renders him "unable to understand what a diagnosis of PSEDD is, or how to reform from an alleged diagnosis of PSEDD, or how to adequately and effectively defend himself as not having a diagnosis of PSEDD." Id.

In Weider v. Armenakis, supra, the Oregon Court of Appeals concluded that the statutory standard for making a finding of PSED is a legal, rather than medical determination, and it is one for the Board, not a psychiatrist or psychologist, to make.

Plaintiff's argument that a legal definition (as opposed to a medical diagnosis) is unconstitutionally vague, is based on a distinction without substance.

The Oregon Court of Appeals has defined "diagnosis" for the purposes of applying O.R.S. 144.125(3), as "the art or act of identifying a disease from its signs and symptoms." Christensen v. Thompson, 176 Or. App. 54 at 60, 31 P.3d 449 (2001). In this case, Dr. Shellman diagnosed plaintiff with an "Antisocial Personality Disorder" and Aytypical Paraphilla with Sadistic Features, by history." Defendants' Exhibit 106, p. 3.

PSED is not like a virus that can be conclusively

11 - FINDINGS AND RECOMMENDATION

determined by the presence of pathogens or other objective criteria. A medical diagnosis, particularly in the area of psychiatric and psychological disorders, involves subjective judgments on the part of the examining doctor, based on symptoms and behaviors. A legal conclusion is no different.

In <u>Weider</u>, the court explained that the term "severe emotional disturbance" was not a recognized psychiatric or psychological diagnosis and that the legislature's choice of that phrase reflected an intention that the Board rather than a psychiatrist or psychologist, make the final determination whether a prisoner's release should be deferred. <u>Weider v. Armenakis</u>, <u>supra</u> at p. 19.

Moreover, the "bottom line" in the Board's determination of whether to defer a prisoner's release is whether the prisoner constitutes a "danger to the health and safety of the community." The fact that the 1993 Oregon Legislature eliminated the requirement of a "diagnosis" and eliminated "present and severe" from the definition of a qualifying mental disturbance, did not substantively alter this standard.

Plaintiff's claim that he is unable to "understand" the diagnosis or "reform from" a diagnosis of PSED because it is has been held to be legal conclusion to be made by the Board rather than a medical "diagnosis" or judgment to be made by a psychiatrist or psychologist, is not convincing.

<u>Claim Five:</u>   Plaintiff alleges: "Defendant Rea practices issuance of 'boilerplate' postponement orders which: restates

12 - FINDINGS AND RECOMMENDATION

the ORS 144.125(3), claims to rely on the psychological exam report, as well as "other" information without any finding of fact, ultimate facts, or conclusions of law, along with not complying with ORS 144.135 or (1983) OAR 255-60-005(6) in failing to clearly state the facts and specific reasons for its decisions or providing written detailed bases of its decisions, or failing to list the individual votes of the board members when postponing parole release under ORS 144.125(3), which violates plaintiff's rights to due process of law." Complaint (#2) p. 3.

A prisoner does not have a federal constitutional right to parole. Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir. 1991). To the extent that plaintiff may have a liberty interest in parole under Oregon "statutes, administrative regulations, or published prison policy, rules, and regulations," Id. at p. 1067, I find that the Board did not violate plaintiff's due process rights because the Board complied with the prole procedure set forth by Oregon law. See, Davis v. Oregon Board of Parole, CV-02-1399-Mo, 2004 U.S. Dist. LEXIS 9986 (D. Or. 2004).

Under the former O.R.S. 144.125(3) in effect at the time of plaintiff's conviction and sentence, the Board can postpone a prisoner's release until a specific future date upon a diagnosis that the prisoner has a "present severe emotional disturbance such as to constitute a danger to the health and safety of the community." As discussed above, the Board

13 - FINDINGS AND RECOMMENDATION

appropriately made such a finding with respect to plaintiff.

O.R.S. 144.135 requires that "the board shall state in writing the detailed bases of its decision under O.R.S. 144.110 to 144.125." In <u>Anderson v. Board of Parole</u>, 303 Or. 618, 621, 740 P.2d 760 (1987), the court held that the statutory requirement of O.R.S. 144.135 were satisfied by a Board Action Form (BAF) which is its "final order" and contains a statement of facts and ultimate conclusions as to a prisoner's release.

In this case, the BAF relative to plaintiff's release meets the statutory requirements. <u>See</u> Defendants' Exhibit 103. The Board provided plaintiff with a BAF which detailed its findings regarding the September 19, 2001 hearing, listed the persons present at the hearing, including Board members. and the information it considered in reaching its conclusion. <u>Id</u>.

Plaintiff has not offered any evidence in support of his allegation that the Board issues "boilerplate" postponement orders. The record reflects that the Board complied with the statutory requirements relative to its decision regarding plaintiff's release. It is not surprising that plaintiff disagrees with the Board's decision. However, plaintiff's disagreement with the Board's determination or plaintiff's perception of the process does establish a due process violation.

<u>Summary</u>: Plaintiff seeks to enjoin defendants from

14 - FINDINGS AND RECOMMENDATION

applying the alleged procedures and practices complained of herein from his future parole proceedings.

In order to merit injunctive relief a plaintiff must establish: (1) that he suffered an irreparable injury; (2) that the remedies available at law are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and the defendant(s), a remedy in equity is warranted; and, (4) that the public interest would not be disserved by a permanent injunction. EBay Inc. v. Mercexchange, L.L.C., __ U.S. __, 126 S. Ct. 1837 (2006); Weinburger v. Romero-Barcelo, 456 U.S. 305 (1982); Amoco Production Co. v. Gambell, 480 U.S. 531 (1987).

In this case, plaintiff has not established that defendants' alleged policies and practices violated his constitutional rights or caused him an "irreparable injury" which he is entitled to injunctive relief.

Based on all of the foregoing, I find that there are no genuine issues of material fact remaining in this case and that defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (#105) should be allowed; Plaintiff's Motion for Summary Judgment (#114) should be denied. This proceeding should be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district

15 - FINDINGS AND RECOMMENDATION

court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 24 day of September, 2007.

_____
Mark D. Clarke
United States Magistrate Judge